**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

RICHARD TINDALL                                                                              PLAINTIFF

v.                                         No. 4:05CV01141 JLH

ARKANSAS STATE POLICE DEPARTMENT;
STEVE DOZIER, in his individual and official capacity;
SHAWN GARNER, in his individual and official capacity;
DALE DONHAM, in his individual and official capacity;
JOHN DOE 1, in his individual and official capacity; and
JOHN DOE 2, in his individual and official capacity                             DEFENDANTS

**OPINION AND ORDER**

This action arises out of the arrest of Richard Tindall for reckless driving and resisting arrest. Tindall brings suit under 42 U.S.C. § 1983 alleging that troopers Shawn Garner, Dale Donham, John Doe 1, and John Doe 2 of the Arkansas State Police Department used excessive force against him in violation of the Fourth and Fourteenth Amendments. He also alleges that the Arkansas State Police Department and Steve Dozier, the director of the Arkansas State Police Department, failed to train and supervise the troopers properly. In addition, Tindall asserts claims under Arkansas law for battery and the tort of outrage against Garner, Donham, Doe 1, and Doe 2. The defendants have now moved for summary judgment. For the following reasons, the defendants' motion for summary judgment will be granted in part and denied in part.

**I.**

Tindall has Type I Diabetes Mellitus. On the night of August 22, 2004, he suffered a hypoglycemic[1] event while driving home from his daughter's house on Interstate 30. He began driving erratically and struck the concrete barrier wall on the highway several times.

---

[1] Hypoglycemia is "an abnormally diminished concentration of glucose in the blood." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 894 (30th ed. 2003).

Sergeant Garner of the Arkansas State Police received a call from dispatch concerning a possible drunk driver, later identified as Tindall, who was traveling eastbound on Interstate 30. Garner waited on the shoulder for Tindall to pass his position and, activating his onboard camera, emergency lights, and siren, followed Tindall. As Garner pursued Tindall, Tindall again struck the concrete barrier but did not stop. Garner radioed to Corporal Donham and Trooper Alsbrook for backup. After an approximately two-and-a-half-mile pursuit, Tindall pulled over and stopped, then drove an additional 100 yards before coming to a complete stop. At that point, Donham, Alsbrook, and Garner exited their vehicles and approached Tindall's vehicle. Both Donham and Garner had their weapons drawn.

The troopers repeatedly shouted "get out of the car" as they approached Tindall's vehicle, which was still running. Tindall did not respond. When they reached the vehicle, they could see Tindall clenching the steering wheel with both hands and looking straight ahead. The troopers holstered their weapons and attempted to pull Tindall out of the vehicle. Tindall continued to grip the steering wheel and look straight ahead. The troopers pulled Tindall out of the vehicle chest down onto the ground. When Tindall began to push himself off of the ground with his hands, Alsbrook administered several blows to the back of Tindall's head with his fist, knocking Tindall back to the ground. The troopers attempted to pull Tindall's arms out from under him but Tindall continued to resist. Tindall's hands were near his wasitband yet under his body where the troopers could not see them. Alsbrook then gave Tindall a few kicks in the ribs, knocking the wind out of Tindall and allowing the troopers to handcuff his hands behind his back. After Tindall was handcuffed, Trooper Breckenridge arrived on the scene.

The narrative of events from Garner's pursuit of Tindall to the handcuffing of Tindall is exclusively based on the troopers' testimony because Tindall testified that he did not remember

2

anything that happened between the onset of his hypoglycemic event and his finding himself handcuffed on the ground.  Tindall testified at his deposition that his first memory of these events came when he had already been handcuffed.  He testified that, about the time he realized that he was on the ground handcuffed, he was grabbed by the hair of his head and something was forced into his mouth.  After the object was removed from his mouth, he testified that he was kicked in the side of his head.  All the troopers denied at their depositions that any force was used after Tindall was handcuffed.

The troopers searched inside Tindall's vehicle and found a prescription bottle of medication and some syringes.  No alcoholic beverages or controlled substances were inside the vehicle.  Thinking that Tindall's condition might not be intoxication, Garner called the Metropolitan Emergency Medical Services for an ambulance.  When the medical personnel arrived, they found that Tindall's blood sugar was extremely low.  Tindall was taken to Baptist Medical Center, treated for hypoglycemia, abrasions, and contusions, and released that night.  Tindall also testified that his nose was broken, his forehead was "real beat up," and he had cuts and lacerations on his face.

## II.

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005).  A genuine issue of material fact exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

### III.

Troopers Garner, Donham, Alsbrook, and Breckenridge assert that they are entitled to qualified immunity with respect to Tindall's section 1983 claim for excessive force. Qualified immunity shields law enforcement officers from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). Qualified immunity is an affirmative defense on which the defendant carries the burden of proof. *Sparr v. Ward*, 306 F.3d 589, 593 (8th Cir. 2002). The purpose of qualified immunity is to allow public officials to perform their duties in a manner they believe to be correct without fear for their own financial well being. *Id*. "Toward this end, the rule has evolved that an official performing discretionary functions will generally be immune from liability unless a reasonable person in his position would have known his actions violated clearly established law." *Id*. (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987)).

"A court engaged in a qualified immunity inquiry uses a two-step process." *Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1103 (8th Cir. 2004). The first question is, taken in the light most favorable to the party asserting the injury, whether the facts alleged show that the official's conduct violated a constitutional right. *Craighead v. Lee*, 399 F.3d 954, 961 (8th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001)). If the facts, taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right, the second question is whether the right was clearly established. *Id*.

"The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person." *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998); *see also Wilson v. Spain*, 209 F.3d 713, 716 n.3 (8th Cir. 2000) (stating that

"the right to be free from excessive force in the context of an arrest has been clearly established for some time"). "[A]n officer's use of force is not excessive under the Fourth Amendment if it was objectively reasonable under the particular circumstances." *Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005) (quotation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396-97, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989). "Circumstances such as the severity of the crime, whether the suspect posed a threat to the safety of the officers or others, and whether the suspect was resisting arrest are all relevant to the reasonableness of the officer's conduct." *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir. 2003).

Facts similar to the facts here were presented in *Wertish v. Krueger*, 433 F.3d 1062 (8th Cir. 2006). In *Wertish*, the plaintiff suffered a hypoglycemic event that caused him to be disoriented and to drive erratically. *Wertish*, 433 F.3d at 1065. When the plaintiff was not responsive after being pulled over, law enforcement officers forcibly removed him from his car, threw him to the ground, and twisted his arms behind his back to handcuff him. *Id*. The Eighth Circuit held that the actions of the officers were reasonable:

> When a suspect is passively resistant, somewhat more force may reasonably be required. Wertish would not exit the truck, so it was reasonable to pull him out and take him to the ground. Handcuffing inevitably involves some use of force. When Wertish persisted in lying on his hands, it was reasonable to pull them forcibly behind his back, where they could be cuffed.

*Id*. at 1066-67. Here, the troopers argue that their use of force to handcuff Tindall was no less reasonable than the officers' use of force in *Wertish*. Perhaps. The troopers could not know that Tindall was diabetic when they observed him driving erratically. Tindall did not immediately stop

5

his vehicle or respond to the troopers' repeated requests to exit the vehicle when stopped. Because Tindall's vehicle was still running, the troopers had to act quickly to prevent Tindall from driving away and again jeopardizing the safety of those traveling on the interstate. Forcibly pulling Tindall from the vehicle was therefore reasonable. When on the ground, Tindall continued to resist the officers, first by attempting to stand back up and then by placing his hands under his waist where the troopers could not see them. That a suspect resists arrest and creates a potential for danger to the officers must be considered when determining the reasonableness of a particular use of force. *See Crumley*, 324 F.3d at 1007.

On the other hand, Tindall testified that, after he had been handcuffed, he was grabbed by the hair of the head, had something forced into his mouth, and was then kicked in the side of the head. No such testimony was presented in *Wertish*, which presented facts on the "hazy border." *Wertish*, 433 F.3d at 1068 (Bye, J., concurring). The troopers deny using any force after Tindall was handcuffed and vigorously challenge the accuracy of Tindall's memory in their brief. The defendants in their brief state that "it is obvious from a review of the videotape . . . that Tindall's vague recollection of this incident is inaccurate." Because the video of the incident created by the onboard camera in one of the troopers' vehicles was not submitted to this Court, the Court, for purposes of this motion for summary judgment, must assume otherwise. Tindall's testimony creates a fact issue sufficient to defeat the defendants' motion for summary judgment on Tindall's claim for excessive force. Viewed in the light most favorable to Tindall, the facts here show a greater use of force than in *Wertish* though somewhat less than in *Samuelson v. City of New Ulm*, 455 F.3d 871 (8th Cir. 2006). A genuine issue of material fact exists, so it would be inappropriate to grant summary judgment based on qualified immunity. *Craighead*, 399 F.3d at 963-64. Even if the force used to handcuff Tindall was reasonable, if the jury believes Tindall that additional force was used

thereafter, it could find that excessive force was used.  *Cf. Samuelson*, 455 F.3d at 876; *Mayard v. Hopwood*, 105 F.3d 1226 (8th Cir. 1997) (finding a constitutional violation where the plaintiff was slapped in the face and punched in the chest while handcuffed in the rear of the defendant's squad car).

The defendants also argue that the abrasions and contusions that Tindall suffered when he was forced to the ground, kicked in the side, and slapped on the back of the head were insufficient as a matter of law to constitute a Fourth Amendment violation for excessive use of force because Tindall's injuries were not long-term or permanent.  That argument appears to be contrary to Eighth Circuit precedent.  *See Lambert v. City of Dumas*, 187 F.3d 931, 936 (8th Cir. 1999) (finding a single small cut of the lateral right eyelid and small scrapes of the right posterior knee and calf sufficient to meet the "actual injury" requirement for an excessive force claim); *Dawkins v. Graham*, 50 F.3d 532, 535 (8th Cir. 1995) (holding that bruises and elevated blood pressure were sufficient to meet the "actual injury" requirement for an excessive force claim).  In *Wertish*, the court stated, "[R]elatively minor scrapes and bruises and the less-than-permanent aggravation of a prior shoulder condition were *de minimis* injuries that support the conclusion that Krueger did not use excessive force."  *Wertish*, 433 F.3d at 1067.  However, *Wertish* did not say that the plaintiff's injuries failed to meet the "actual injury" requirement for an excessive force claim.  No case holds that, as a matter of law, officers cannot be found to have used excessive force unless they use sufficient force to cause long-term or permanent injuries.

**IV.**

Tindall asserts state-law claims for battery and the tort of outrage against Garner, Donham, Alsbrook, and Breckenridge.  "Battery is a wrongful or offensive physical contact with another through the intentional contact by the tortfeasor and without the consent of the victim, the

7

unpermitted application of trauma by one person upon the body of another person." *Costner v. Adams*, 82 Ark. App. 148, 156, 121 S.W.3d 164, 170 (2003). The defendants cite section 5-2-610(a)(1) of the Arkansas Code Annotated in their defense. Section 5-2-610(a)(1) states that "[a] law enforcement officer is justified in using nondeadly physical force . . . upon another person if the law enforcement officer reasonably believes the use of nondeadly physical force . . . is necessary to [e]ffect an arrest." Accordingly, the troopers were justified under Arkansas law to use the force they did against Tindall if they reasonably believed that it was necessary. For the same reasons that the Court cannot grant summary judgment on qualified immunity grounds, the Court cannot say that the troopers are entitled to summary judgment on Tindall's battery claim. A reasonable officer would not believe that it is necessary to kick a man who has already been handcuffed and subdued. The defendants also cite section 19-10-305 of the Arkansas Code Annotated in their defense. Section 19-10-305 provides tort immunity to officers of the state of Arkansas for acts "other than malicious acts" occurring within the scope of their employment. Again, there is a factual issue as to whether the officers maliciously used force after Tindall was handcuffed. Summary judgment is therefore denied as to Tindall's claim for battery.

"To establish an outrage claim, a plaintiff must demonstrate the following elements: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency,' and was 'utterly intolerable in a civilized community'; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it." *McQuay v. Guntharp*, 331 Ark. 466, 470, 963 S.W.2d 583, 585 (1998) (quoting *Angle v. Alexander*, 328 Ark. 714, 945 S.W.2d 933 (1997)). The parties have not devoted sufficient attention to the outrage claim

to enable the court to decide whether there is a genuine issue of material fact on the outrage claim. Because the moving party bears the initial burden of establishing a prima facie case of entitlement to summary judgment, the motion will be denied as to the outrage claim.

## V.

Tindall asserts claims against the Arkansas State Police Department and all of the troopers in their official capacity. All of these claims are claims against the state of Arkansas that are barred by the Eleventh Amendment. *Jacobsen v. Dep't of Transp.*, 450 F.3d 778, 780 (8th Cir. 2006) (citing cases). Tindall attempts to avoid the Eleventh Amendment's bar by arguing that he only seeks prospective injunctive relief from the state. A suit for prospective injunctive relief against a state is not barred by the Eleventh Amendment, *Edelman v. Jordan*, 415 U.S. 651, 677, 94 S. Ct. 1347, 1362, 39 L. Ed. 2d 662 (1974). However, Tindall has not demonstrated that he has standing to pursue injunctive relief against the state of Arkansas. "To have Article III standing to seek prospective relief, plaintiffs must show they are likely to suffer future injury that will be remedied by the relief sought." *Elizabeth M. v. Montenez*, 458 F.3d 779, 784 (8th Cir. 2006). Tindall has made no such showing. Summary judgment is therefore granted in favor of the state of Arkansas on all of Tindall's claims against it.

## VI.

Tindall alleges that Dozier, as director of the Arkansas State Police, failed to train and supervise employees of the Arkansas State Police Department properly in matters of medical and hypoglycemic emergency and that such failure resulted in deliberate indifference to Tindall's rights. A superior officer may be individually liable only when he directly participates in a constitutional violation or his failure to train or supervise the offending actor causes the constitutional violation. *Forrest City Police Dep't v. Tilson*, 28 F.3d 802, 806 (8th Cir. 1994). To establish a claim for failure

to train, a plaintiff must show that, in light of the duties assigned to specific officers, the need for more or different training was so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the supervising officer can reasonably be said to have been deliberately indifferent to that need. *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996). A supervising officer can only be liable if he received notice of a pattern of unconstitutional acts committed by subordinates. *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997). Tindall offers no evidence of such a pattern regarding unlawful arrests. Dozier is therefore entitled to summary judgment on Tindall's failure to train claim.

## CONCLUSION

For the reasons stated above, summary judgment is GRANTED in favor of the State of Arkansas and Dozier on all claims. Summary judgment is DENIED as to Tindall's claims against Garner, Donham, Alsbrook, and Breckenridge in their individual capacities for excessive force, outrage, and battery. Document #29.

IT IS SO ORDERED this 14th day of September, 2006.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE